**KIRBY et al. v. PENNSYLVANIA R. CO.**
**Civ. No. 9986.**

United States District Court
E. D. Pennsylvania.

Aug. 3, 1950.

John Francis Williams, Philadelphia, Pa., for plaintiffs.

Philip Price, Philadelphia, Pa., for defendant.

FOLLMER, District Judge.

This is an action brought under the Railway Labor Act, 45 U.S.C.A. § 151 et seq., for enforcement of an order of the National Railroad Adjustment Board. The plaintiffs are thirty-nine women residents of the City of Philadelphia, Pennsylvania, and the defendant is The Pennsylvania Railroad Company, a Pennsylvania corporation, having its principal office in the City of Philadelphia aforesaid.

The complaint alleges that plaintiffs were employed by defendant as truckers at its Philadelphia freight transfers under and pursuant to a certain agreement entered into between the Brotherhood of Railway and Steamship Clerks, Freight Handlers, Express and Station Employees and the defendant, effective May 1, 1942; that in violation of the terms of the agreement, defendant did, at a time beginning on or about March 15, 1945, and continuing to about October 23, 1946, abolish the positions of plaintiffs herein and did, beginning on or about May 16, 1946, and continuing thereafter, engage contract employees to perform the work of the abolished positions of the plaintiffs. The complaint further alleges that in consequence of the alleged violations of the contract by defendant the said Brotherhood submitted its statement of claim on behalf of certain named employees of defendant affected and "any others adversely affected" to the National Railroad Adjustment Board, Third Division; that following a full and complete hearing, the Board on January 25, 1949, issued its Award No. 4291 as follows:

" 'Claim (a) sustained.' [The Brotherhood's claim that the Agreement was violated by the defendant carrier in abolishing the positions of certain named employees 'and others.']

" 'Claim (b) sustained on the reestablishment of the positions for those listed and others adversely affected; that monetary losses sustained be confined to proof of the same, with deductions allowed from

earnings from other sources during the period under consideration.' "

The complaint further alleges that on January 25, 1949, the Board, in conformity with its award above quoted, issued its order requiring defendant to comply with the terms of the award on or before April 1, 1949; that they, the plaintiffs, are persons included within the meaning of the phrase "and others adversely affected" contained in the award of the Board and are therefore entitled, under the terms of the award and order, to be reinstated as employees of defendant and to receive the wages from the time of their alleged wrongful dismissal, less any sums earned by them in other employment during said period.

Defendant moved to dismiss (a) because the complaint fails to state a claim upon which relief can be granted under the provisions of the Railway Labor Act; and (b) on the ground that the court lacks jurisdiction because the only claim alleged in the complaint upon which relief might be granted is an allegation of simple breach of contract, and it appears on the face of the complaint that there is no diversity of citizenship between the plaintiffs and the defendant.

Award No. 4291 in Docket No. CL-4092 of the National Railroad Adjustment Board was by stipulation made a part of the record herein.

The pertinent portions of the Railway Labor Act are, 45 U.S.C.A. § 153, subd. 1 (j), (o) and (p):

"(j) Parties may be heard either in person, by counsel, or by other representatives, as they may respectively elect, and the several divisions of the Adjustment Board shall give due notice of all hearings to the employee or employees and the carrier or carriers involved in any disputes submitted to them."

"(o) In case of an award by any division of the Adjustment Board in favor of petitioner, the division of the Board shall make an order, directed to the carrier, to make the award effective and, if the award includes a requirement for the payment of money, to pay to the employee the sum to which he is entitled under the award on or before a day named.

"(p) If a carrier does not comply with an order of a division of the Adjustment Board within the time limit in such order, the petitioner, or any person for whose benefit such order was made, may file in the District Court of the United States for the district in which he resides or in which is located the principal operating office of the carrier, or through which the carrier operates, a petition setting forth briefly the causes for which he claims relief, and the order of the division of the Adjustment Board in the premises. Such suit in the District Court of the United States shall proceed in all respects as other civil suits, except that on the trial of such suit the findings and order of the division of the Adjustment Board shall be prima facie evidence of the facts therein stated, and except that the petitioner shall not be liable for costs in the district court nor for costs at any subsequent stage of the proceedings, unless they accrue upon his appeal, and such costs shall be paid out of the appropriation for the expenses of the courts of the United States. If the petitioner shall finally prevail he shall be allowed a reasonable attorney's fee, to be taxed and collected as a part of the costs of the suit. The district courts are empowered, under the rules of the court governing actions at law, to make such order and enter such judgment, by writ of mandamus or otherwise, as may be appropriate to enforce or set aside the order of the division of the Adjustment Board."

The complaint before the Adjustment Board was filed by the Brotherhood of Railway and Steamship Clerks, Freight Handlers, Express and Station Employes against the Pennsylvania Railroad Company. It alleges (a) that Rule 3-C-2 was violated by the Carrier when positions of Truckers, Philadelphia Transfer, held by four named individuals "and others", were abolished effective May 13, 1946, and the work assigned to Contract Employes not covered by the Rules Agreement. It prays (b) that the said positions be re-established and the incumbents, as well as any others

adversely affected, be compensated for any monetary losses sustained. The award then recites in extenso what purports to be the full complaint and the full answer of the carrier.

The Findings of the Board are as follows:

"Findings: The Third Division of the Adjustment Board, after giving the parties to this dispute due notice of hearing thereon, and upon the whole record and all the evidence, finds and holds:

"That the Carrier and the Employes involved in this dispute are respectively carrier and employes within the meaning of the Railway Labor Act, as approved June 21, 1934;

"That this Division of the Adjustment Board has jurisdiction over the dispute involved herein; and

"That claims (a) and (b) be sustained."

The Award of the Board is as follows:
"Award

"Claim (a) sustained.

"Claim (b) sustained on the reestablishment of the positions for those listed and others adversely affected; that monetary losses sustained be confined to proof of the same, with deductions allowed from earnings from other sources during the period under consideration."

Nowhere in the proceedings before the Board were the ousted employees, who were described generally as "and others" and in favor of whom the adjudication was made, specifically identified, nor were the contract employees who were alleged to be then holding the jobs in question specifically identified; nor is there any independent finding of the Board as to which of the original employees (other than the named four) were ousted in the manner complained of and not for cause.

In 1939 the President of the United States requested the Attorney General to appoint a committee to investigate the "need for procedural reform in the field of administrative law * * *. with a view to detecting any existing deficiencies and pointing the way to improvements." (Senate Document No. 8, 77th Congress, 1st Session, Page 252). In 1941 the then Attorney General, now Mr. Justice Jackson, submitted the report of his Attorney General's Committee on Administrative Procedure. That portion of the Committee's report relating to the National Railroad Adjustment Board states in part (Senate Document No. 8, 77th Congress, 1st Session, Page 441):

"The adjudicatory work of the National Railroad Adjustment Board is handled by four autonomous Divisions, none of which uses intermediate reports or proposed decisions. Division I, which considers by far the largest number of cases, reports its final decisions by reprinting the statement of claim, the employee's statement of facts, the employee's position, the carrier's statement of facts, the carrier's position, the findings, and the award. *All these items, except the findings and the award, are taken from the submissions of the parties. No attempt is made to put them into an intelligible narrative,* and the mere quotation of conflicting contentions often fails to give any clear picture of the problems involved. The findings consist merely of a statement that the Division has jurisdiction, a statement that the parties were given due notice of hearing or waived hearing, and a statement, in one or two sentences, of the principal reason for sustaining or denying the claim. *The latter is often useless in explaining the issue or the legal or factual elements on which the decision is based;* it may be, for example, a cryptic remark that 'The rules cited from agreement in evidence applied to facts of record support the request,' or that 'Under the facts and circumstances cited in the record an affirmative award is not warranted.' Beyond that, *there are no findings of fact or conclusions of law.*

"Decisions of the other three Divisions follow the same pattern, for the most part, and are likewise composed largely of quotations from the parties' statements of fact and contentions. There is one important exception, however—many of them contain in addition an opinion explaining and justifying the award. But, in many instances even these opinions are not adequate for a thorough understanding of the

cases, so that referees seeking the guidance of precedents frequently find it necessary in their research to go behind the printed reports and resort to the files of the cases. *The opinion portion of the decisions* is usually brief, and often *fails specifically to resolve conflicting contentions of the parties* or to explain in detail the process of reasoning by which the result was reached." (Emphasis supplied.)

It is evident from the record in this case that the recommendations of Mr. Justice Jackson's Committee are still being ignored by the Adjustment Board. The form of the award in the instant case is precisely the type criticized in the Committee's report, with the same sort of "cryptic remarks."

In System Federation No. 59 of Railway Employees Department of American Federation of Labor v. Louisiana & A. Ry. Co., 5 Cir., 1941, 119 F.2d 509, 513, certiorari denied 1941, 314 U.S. 656, 62 S.Ct. 108, 86 L.Ed. 526, the court sustained the dismissal of a complaint to enforce an award of the Adjustment Board, on the ground that it contained neither definite findings of fact nor a definite award, holding, inter alia:

"* * * Further finding that it was unable to determine who upon the list submitted, was entitled to relief, it yet found generally that many of the employees had been furloughed and not re-employed in violation of the rules and were therefore entitled to relief. Its findings of fact therefore, and its award, instead of being and containing the definite determinations of fact, as to the persons entitled to relief, and the relief to which they are entitled, contemplated and required by the act, consisted of merely general statements, that some of the employees were entitled to some relief; and that those so entitled should be awarded such relief as they were entitled to. *The act contemplates not merely general conclusions, but precise and definite findings of fact and final and definite awards, capable of enforcement, not vague general outlines which must be filled in by the courts.*

"Considering the suit then as purely a statutory suit upon the award, we think it clear that it contains neither definite findings of fact entitled to have the effect of prima facie evidence, nor an award capable of enforcement. * * *" (Emphasis supplied.)

In Railroad Yardmasters of North America, Inc. v. Indiana Harbor Belt R. Co., D.C.N.D.Ind., 1947, 70 F.Supp. 914, affirmed 7 Cir., 166 F.2d 326, a similar suit to enforce an award and order of the National Railroad Adjustment Board, the court said in 70 F.Supp. at page 916:

"The order incorporates by reference the award and contains no added specifications. The award itself reads merely, 'Complaint disposed of per findings.' The findings recite, 'We find, as represented by petitioner, that the facts presented in this docket are contrary to the provisions of controlling Rule 7(a) of the Yardmasters' Agreement, and so hold.' This so-called finding is not a finding of facts; it is a conclusion of law. It is a conclusion based on facts that are not in the findings but apparently are in the 'docket,' whatever that may be. True, a statement of claim precedes the findings but whether this statement is identical with the facts 'presented' in the docket is not revealed.

"Furthermore, the statement of claim itself is indefinite. It does not contain the names of the two yardmen over whom the dispute arose. Extraneous evidence would have to be adduced to give the award meaning.

"* * * *The provision in the Act that the findings and order shall be prima facie evidence of the facts stated therein requires the findings to be a definite and complete statement of the ultimate facts and not a legal conclusion based upon undisclosed findings.*" (Emphasis supplied.)

Mr. Justice Minton, then Circuit Judge, joined in the unanimous affirmance by the Circuit Court of Appeals of the order dismissing the above complaint, Railroad

Yardmasters of North America, Inc. v. Indiana Harbor Belt R. Co., which opinion held, inter alia, 166 F.2d 326, at pages 329, 330, and 331:

"This brings us to the issue as to whether the award and order were so vague and indefinite as to preclude enforcement. The order sought to be enforced states: 'The Indiana Harbor Belt Railroad Company is hereby Ordered to make effective Award No. 318, made by the Fourth Division of the National Railroad Adjustment Board (copy of which is attached and made part hereof), as therein set forth * * *.'

"The award referred to in the order reads: 'Complaint disposed of per findings.' *Obviously, neither the order nor the award furnish any information either as to the controversy before the Board, its decision or what the defendant was required to do.* Assuming, however, that the 'findings' referred to in the award are incorporated therein, we look to the findings. The only findings which appear material read:

" 'The Division is here under the necessity of construing Rule 7(a) of agreement between the parties involving yardmaster class as the same be applied to the facts presented in this docket irrespective of any agreement existing with respondent carrier governing wages and working conditions of another craft or crafts.

" 'We find, as represented by petitioner, that the facts presented in this docket are contrary to the provisions of controlling Rule 7(a) of the Yardmasters' Agreement, and so hold.'

"*Again, obviously, there are no facts disclosed in these so-called findings upon which an award could be based.* * * *

"The most that can be said regarding this claim is that it reveals there was a controversy between the railroad yardmasters and the carrier as to seniority rights. The controversy arose because 'two yardmen' were, according to the claim, improperly granted seniority rights, and it was requested that the 'two yardmen' be deprived of such rights. *The claim does not name the 'two yardmen' whom it was sought to have deprived of their seniority rights; in fact, they were not parties to the proceeding before the Adjustment Board and their names are no place mentioned, either in the claim, findings, award or order.*

\* . \* \* \* \*· \*

"We are of the view that it cannot reasonably be held that the award and findings in the instant case are sufficiently definite and certain as to make a prima facie case in favor of the plaintiff. *Plaintiff necessarily cannot rely upon the findings and award but must offer additional proof in support of the allegations of its bill. Furthermore, we think the carrier is entitled to know from the order, award and findings what it is required to do.* It is argued, and of course it may be true, that the defendant as a matter of fact had knowledge that the order called for the removal of Barker from the seniority roster. If so, *it did not acquire such knowledge from the order, award or findings.* Surely it was not contemplated that the carrier's knowledge was to be acquired through some other source or means. It also seems reasonable to think that *the defendant was entitled to an order which would protect it in the event of compliance.* What authority did it have to demote Barker when he was not a party to the proceeding and was not named as the employee to be deprived of his seniority? Neither do we think the defendant was required to run the risk of a law suit (including attorney fees for the petitioner) merely to suffer an order against it which would afford protection upon compliance. *It is our view that the award and order are too uncertain and indefinite to furnish the basis for the instant action.*" (Emphasis supplied.)

"Cryptic remarks" do not constitute prima facie evidence, and before an award will be considered as prima facie evidence in accordance with the terms of the Act, it must contain precise and definite findings of fact and not mere conclusions based on undisclosed findings. To quote at length the pleadings of the parties and then to merely state "Claim sus-

tained" is but to state a conclusion of law upon no factual determination. In the instant case additional proof would be required not only to identify each of the unnamed ousted employees as well as each of the alleged ousting contract employees but also to determine that in each instance the ousting was because of the offending method and not, as to any employee not specifically named, justifiably for cause. The award and order of the Adjustment Board are not sufficiently clear and definite to be capable of enforcement and for that reason alone the motion to dismiss would have to be granted.

Furthermore, the award states in its findings that "due notice of hearing" was given to "the parties to this dispute;" the caption on the docket before the Board reads:

"Parties to Dispute:

"Brotherhood of Railway and Steamship Clerks, Freight Handlers, Express and Station Employes

"The Pennsylvania Railroad Company"

Section (j) of the Act specifically provides that the "Adjustment Board shall give due notice of all hearings to the employee or employees and the carrier or carriers involved". There is nothing in the award to indicate that notice was given by the Board to the employees now performing the work which the plaintiffs seek, and certainly they qualify as "employees involved" and as such were entitled to notice.[1]

By way of comment with reference to an additional contention of the defendant, this Court has jurisdiction of the case regardless of the lack of diversity of citizenship apparent from the complaint, it being a proceeding brought under the Railway Labor Act, 45 U.S.C.A. § 151 et seq., for the enforcement of an order of the National Railroad Adjustment Board.[2]

Plaintiffs complain that the motion to dismiss lacks particularity and should be refused. This is, of course, completely without merit. The motion follows clearly Form 19 of the Appendix of Forms to the Federal Rules of Civil Procedure, 28 U.S. C.A., and is adequate.

For the reasons set forth in the foregoing opinion it is ordered, adjudged and decreed that the complaint be and is hereby dismissed.

---

1. Nord v. Griffin, 7 Cir., 1936, 86 F.2d 481, certiorari denied 1937, 300 U.S. 673, 57 S.Ct. 612, 81 L.Ed. 879; Hunter v. Atchison, T. & S. F. Ry. Co., 7 Cir., 1948, 171 F.2d 594, certiorari denied 1949, 337 U.S. 916, 69 S.Ct. 1157, 93 L. Ed. 1726.

2. Swartz v. South Buffalo Ry. Co., D.C.W. D.N.Y.1942, 44 F.Supp. 447.